597 F.Supp. 1092 (1984)
Steven LOVE, Plaintiff,
v.
Dr. Lee Roy BLACK and Dick Moore, Defendants.
No. 84-1829C(2).
United States District Court, E.D. Missouri, E.D.
November 8, 1984.
*1093 Steven Love, pro se.
Deborah Neff, Asst. Atty. Gen., Jefferson City, Mo., for defendants.

*1094 MEMORANDUM
FILIPPINE, District Judge.
This matter is before the Court on plaintiff's motion for appointment of counsel and defendant's motion to dismiss.[1] Plaintiff is proceeding in forma pauperis and is pro se.
Plaintiff brings this action under 42 U.S.C. § 1983 challenging the discontinuation of a release program whereby the Governor of the State of Missouri would, upon the recommendation of the Department of Corrections, commute sentences of prisoners who had served 6/12 or 7/12 of their sentence. The new program, "administrative parole," allows the release of prisoners upon serving 7/12 of their sentence subject to supervision by the Department of Corrections.
Under 28 U.S.C. § 1915 an action is frivolous and may be dismissed pursuant to § 1915(d) if it fails to state a claim upon which relief can be granted under Martin-Trigona v. Stewart, 691 F.2d 856, 858 (8th Cir.1982); Matz v. Kelsch, 638 F.2d 48, 49 n. 2 (8th Cir.1981). A pro se civil rights complaint is held to less stringent standards than those required of complaints drafted by an attorney, Hughes v. Rowe, 449 U.S. 5, 9, 101 S.Ct. 173, 175, 66 L.Ed.2d 163 (1980) (per curiam); McNally v. Pulitzer Publishing Company, 532 F.2d 69, 73 n. 3 (8th Cir.1976), cert. denied 429 U.S. 855, 97 S.Ct. 150, 50 L.Ed.2d 131 (1976), and can be dismissed for failure to state a claim only if it appears beyond doubt that the plaintiff could prove no set of facts supporting a claim for relief. Estelle v. Gamble, 429 U.S. 97, 106, 97 S.Ct. 285, 292, 50 L.Ed.2d 251 (1976); Guy v. Swift and Company, 612 F.2d 383 (8th Cir.1980) (per curiam).
Plaintiff is a convicted inmate at the Missouri Eastern Correctional Center in Pacific, Missouri. He brings this suit under 42 U.S.C. § 1983 alleging violations of his constitutional rights due to a change in policies concerning merit time release. Prior to 1979 Missouri had two basic merit time provisions. Mo.Rev.Stat. § 216.355 (repealed by L.1977, p. 658, § 1, eff. Jan. 1, 1979) provided for the unconditional release of any prisoner "who shall serve three-fourths of the time for which he was sentenced in an orderly and peaceable manner. ..." The second category of merit time was set forth in Administrative Rules and Regulations. Under this system a prisoner who had served 6/12 or 7/12 of his sentence may have his sentence commuted by the governor upon the recommendation of correction officials. This second category of merit time was based on the governor's power to commute sentences under Article 4, Section 7, of the Missouri Constitution of 1945 and was a "matter of grace resting purely within the discretion of the governor." Parrish v. Wyrick, 589 S.W.2d 74, 78 (Mo.Ct.App.1979) and cases cited therein.
Effective January 1, 1979, Mo.Rev.Stat. § 216.355 was repealed and the only merit time system available to persons whose crimes were committed after that date was the 6/12 or 7/12 program. This program was discontinued on December 15, 1982, when the administrative parole program became effective. Memorandum of David Blackwell (12/15/82). The administrative parole program provides, under certain circumstances, that a prisoner who has served 7/12 of his sentence will be placed on administrative parole.
This change in the merit time release program is the basis for plaintiff's claim. Plaintiff contends that because his release date was set at the 6/12 date, the change in programs constitutes a violation of his constitutional rights.
In their motion to dismiss the defendants first argue, citing Preiser v. Rodriguez, 411 U.S. 475, 487-88, 93 S.Ct. 1827, 1835, 36 L.Ed.2d 439 (1975), that this issue *1095 falls within the scope of habeas corpus and is therefore premature as plaintiff has failed to exhaust state administrative remedies as required by 28 U.S.C. § 2254. The court in Preiser, 411 U.S. at 487-88, 93 S.Ct. at 1835, held that where a prisoner challenges the fact or duration of his confinement his sole federal remedy is a writ of habeas corpus. The Court, however, carefully limited its holding to those cases where the prisoner seeks equitable relief only.
If a state prisoner is seeking damages, he is attacking something other than the fact or length of his confinement, and he is seeking something other than immediate or more speedy releasethe traditional purpose of habeas corpus. In the case of a damages claim, habeas corpus is not an appropriate or available federal remedy. Accordingly, as petitioners themselves concede, a damages action by a state prisoner could be brought under the Civil Rights Act in federal court without any requirement of prior exhaustion of state remedies.
Id. Thus, where, as here, the plaintiff has filed suit for damages under 42 U.S.C. § 1983, application for a writ of habeas corpus is not the sole remedy for plaintiff.
Plaintiff argues that the change in merit time program constitutes a violation of a number of constitutional protections. The United States District Court for the Western District of Missouri recently had the opportunity to review several of these challenges. In Tyler v. Black, No. 82-4383 CV-C-5 (W.D.Mo. Sept. 22, 1983), aff'd No. 83-2445 (8th Cir. July 9, 1984), the court adopted the recommendation of United States Magistrate Richard H. Ralston and granted summary judgment to defendants in a case arising out of essentially the same facts as give rise to the present action. There the court held that "plaintiffs have not demonstrated a violation of their due process, ex post facto or equal protection rights. Nor have they remotely shown a violation of their Eighth Amendment Rights." Tyler, slip op. at 3. The court refers to the Magistrate's review and recommendation in support of its conclusion. This Court finds the reasoning in Tyler persuasive. With respect to the Eighth Amendment claim, here, as in Tyler, plaintiff alleges no facts which demonstrate that his sentence is excessive or disproportionate to the crime committed, Solem v. Helm, 463 U.S. 277, 103 S.Ct. 3001, 77 L.Ed.2d 637 (1983), or that it entails any unnecessary infliction of pain. Rhodes v. Chapman, 452 U.S. 337, 101 S.Ct. 2392, 69 L.Ed.2d 59 (1981). Thus, there is clearly no Eighth Amendment violation.
Similarly, there is no violation of the equal protection clause as plaintiff fails to allege any "improper classification or discrimination among citizens," Shortino v. Wheeler, 531 F.2d 938, 939 (8th Cir.1976), a necessary element of an equal protection claim.
The Western District's conclusion on the due process issue is also persuasive. Plaintiff argues that his expectancy of release on the 6/12 date rises to the level of a protected liberty interest. Missouri law is clear that commutation of sentence under the 6/12 or 7/12 program was purely within the discretion of the governor. Parish v. Wyrick, supra. In essence plaintiff had only the hope that his sentence would be commuted.
In terms of the Due Process Clause, a ... felon's expectation that a lawfully imposed sentence will be commuted or that he will be pardoned is no more substantial than an inmate's expectation, for example, that he will not be transferred to another prison; it is simply a unilateral hope. [Greenholtz v. Nebraska Penal Inmates, 452 U.S. 458, 101 S.Ct. 2460, 69 L.Ed.2d 158 (1979); Leis v. Flynt, 439 U.S. 438, 443-44, 99 S.Ct. 698, 58 L.Ed.2d 717 (1979).] A constitutional entitlement cannot "be createdas if by estoppel merely because a wholly and expressly discretionary state privilege has been granted generously in the past." Id., at 444, n. 5 [99 S.Ct. at 701, n. 5]. No matter how frequently a particular form of clemency has been granted, the statistical probabilities standing alone generate *1096 no constitutional protections; a contrary conclusion would trivialize the Constitution. The ground for a constitutional claim, if any, must be found in statutes or other rules defining the obligations of the authority charged with exercising clemency.
Connecticut Board of Pardons v. Dumschat, 452 U.S. 458, 465, 101 S.Ct. 2460, 2464, 69 L.Ed.2d 158 (1980) (footnote omitted). Accordingly, because the decision to commute a prisoner's sentence is within the discretion of the governor, plaintiff's expectation of a reduced sentence simply does not rise to a protected liberty interest.
Plaintiff also contends that the change violates the ex post facto clause. Again, this Court agrees with the Western District that there is no such violation. Plaintiff relies principally on the United States Supreme Court's holding in Weaver v. Graham, 450 U.S. 24, 101 S.Ct. 960, 67 L.Ed.2d 17 (1981), that the repeal of gain time statute which operated to reduce the amount of gain time for good conduct deducted from a prisoner's sentence was unconstitutional as an ex post facto law. Magistrate Ralston, in his review and recommendation filed in Tyler v. Black and adopted by the Western District, discussed the applicability of Weaver to Missouri's change in merit time policies.
But Weaver is clearly distinguishable. Here, the Missouri legislature did not abrogate the opportunity of these plaintiffs to earn statutory good time. There is no contention on their part that they are unable to earn good time credits under the statutory "three fourths" or "9/12 ths" rate. Instead, plaintiffs complain that the executive action of the Governor in refusing to consider the commutation of their sentences violates the ex post facto clause.
Under Missouri law, "[t]he power of commutation is a matter of grace resting purely within the discretion of the governor." Parrish v. Wyrick, supra at 78. It rests "solely within [his] discretion." Id. Each release under the "7/12ths" or 6/12ths" program depended upon his favorable exercise of that absolute discretionary power. And while that power may have been exercised on a regular and consistent basis through the years, under state law, a Missouri governor could not bind his successor to continue his "good time" programs; nor was he himself bound to continue them throughout the term of his own administration; nor was he bound to his commutation power in any individual case. Thus, unlike the inmate in Weaver, who could rely upon the fact that a statute in existence at the time of his offense afforded him the opportunity to earn good time credits, plaintiffs could not reasonably entertain such an expectation. They could not have relied upon the meaning of a legislative enactment in existence at the time of their crimes because no such statute existed. See Weaver v. Graham, supra [450 U.S.] at 27-29 [101 S.Ct. at 963-464]. The primary purpose of the ex post facto clause is not served by its application in the present case; that is, the requirement that the legislature serve "fair warning" of the elements of, and punishment for, a criminal act. Weaver v. Graham, supra at [450 U.S.] 28-29 [101 S.Ct. at 963-964].
Moreover, the ex post facto clause is not implicated where, as here, executive action is solely involved. The clause is directed at arbitrary and vindictive legislative action and it serves to "uphold the separation of powers by confining the legislature to penal decisions with prospective effect and the judiciary and executive to applications of existing penal law." Weaver v. Graham, supra [450 U.S.] at 29, n. 10 [101 S.Ct. at 964, n. 10]. The ex post facto clause is not drawn into play simply because the chief executive of the State, or one of his agencies, deviates from a policy or practice which he has consistently and regularly followed in the past; that policy or practice does not constitute a "law" within the meaning of the clause. Rifai v. United States Parole Commission, 586 F.2d *1097 695, 697-98 (9th Cir.1978). Cf. Milhouse v. Levy, 548 F.2d 357 (D.C.Cir.1976).
(Footnote omitted.)
Plaintiff makes two constitutional arguments not addressed by the Court in Tyler v. Black. He argues that the change in policy violates separation of powers principles and the double jeopardy clause. With regard to the separation of powers issue plaintiff argues that since the governor has the sole power to grant pardons and to commute sentences, the Board of Probation and Parole may not itself revoke the 6/12 or 7/12 program and thereby revoke commutation of sentences. This argument is clearly without merit. The Board has not revoked or attempted to revoke the governor's constitutional power under the Missouri Constitution, Art. 4, § 7, to commute sentences. The governor is free to exercise his discretion in commuting sentences. The fact that the institution of the new merit time system may make commutations less frequent does not mean that the Board of Probation and Parole has usurped the governor's power.
Plaintiff's final argument against the constitutionality of the new system as applied to him is that the administrative parole system violates the double jeopardy clause of the United States Constitution because by withholding the merit time which plaintiff has already earned, the defendants cause him to serve that portion of his sentence a second time. Plaintiff's argument is without substance. The merit time acquired under the old system was simply used as a criteria for making commutation of sentence recommendations to the governor. Parrish, supra, 589 S.W.2d at 78. As discussed above, the decision to commute a sentence is purely within the governor's discretion. He is under no duty to commute a sentence when a recommendation is made. To argue that the new system violates the double jeopardy clause plaintiff must demonstrate that he is being punished a second time for the same crime. It makes no sense to argue that earning an amount of merit time is the same as having served that time. This would mean that every time the governor refused to commute a sentence under the old system, there was a violation of the double jeopardy clause. This is clearly not the case given the discretionary nature of the decision to commute sentences. Thus plaintiff's final challenge to the administrative parole system is also without merit.
NOTES
[1] Defendants filed what is styled as defendants' response to this Court's order to show cause why plaintiff should not proceed in forma pauperis in which they prayed for dismissal of plaintiff's claim as frivolous. The Court will treat this as a motion to dismiss and will refer to it as same.