# United States Court of Appeals
**FOR THE DISTRICT OF COLUMBIA CIRCUIT**

Argued November 10, 2010      Decided January 4, 2011

No. 10-5221

GERALD WALPIN,
APPELLANT

v.

CORPORATION FOR NATIONAL AND COMMUNITY SERVICES ET
AL.,
APPELLEES

Appeal from the United States District Court
for the District of Columbia
(No. 1:09-cv-01343)

*Sanford M. Saunders Jr.* argued the cause for the appellant.

*Helen L. Gilbert*, Attorney, United States Department of
Justice, argued the cause for the appellees. *Ronald C. Machen
Jr.*, United States Attorney, and *Mark B. Stern*, Attorney, were
on brief.

Before: HENDERSON, TATEL and GRIFFITH, *Circuit Judges*.

Opinion for the Court filed by *Circuit Judge* HENDERSON.

KAREN LECRAFT HENDERSON, *Circuit Judge*: Gerald
Walpin, former Inspector General of the Corporation for
National and Community Services (CNCS), appeals the district

court's dismissal of his mandamus action against the CNCS and three of its officers. *Walpin v. Corp. for Nat'l & Cmty. Serv.*, 718 F. Supp. 2d 18 (D.D.C. 2010). Walpin asks that CNCS be directed to restore him as the CNCS Inspector General on the ground that the President did not comply with the requirement of the Inspector General Act (IGA), as amended by the Inspector General Reform Act of 2008 (IGRA), that the President give the Congress thirty days' notice of his intent to remove an Inspector General and of the reasons therefor. 5 U.S.C. app. 3 § 3(b). We conclude the district court correctly dismissed the action because Walpin does not have a "clear and indisputable right to relief" as required for mandamus.

**I.**

Walpin assumed the post of CNCS Inspector General on January 6, 2007 after Senate confirmation. On June 10, 2009, Walpin received a telephone call from Norman Eisen, the President's special counsel, who issued Walpin an "ultimatum that he either tender his resignation as Inspector General, or be terminated from his post," giving him one hour to decide. Compl. ¶ 29. When asked why, Eisen told Walpin it was "time to move on." *Id.* Walpin "declined to make a decision," whereupon "Eisen informed him that he was being removed from his post as Inspector General." *Id.* The same day, "the White House ordered that [Walpin] be immediately denied all attributes of his post, including access to his office, continued access to his staff, and access to email communications," and "be transferred . . . to the status of administrative leave." *Id.* ¶ 41.

The following day, June 11, 2009, the President sent virtually identical letters to the Vice President (as Senate President) and to the House Speaker, stating in relevant part: "This is to advise that I am exercising my power as President to remove from office the Inspector General of [CNCS], effective 30 days from today. . . . [I]t is vital that I have the fullest

confidence in the appointees serving as Inspectors General. That is no longer the case with regard to this Inspector General." Mot. to Dismiss, Exs. A, B, *Walpin v. Corp. for Nat'l & Cmty. Serv.*, No. 09-1343 (D.D.C. Oct. 26, 2009) (Mot. to Dismiss); *see* Compl. ¶ 31. The same day, Senator Charles Grassley advised the President he was "deeply troubled to learn of the ultimatum given [Walpin] absent Congressional notification." Mot. to Dismiss, Ex. C at 2. In response, the White House Counsel wrote a letter to Grassley stating that the President "intend[ed] to remove [Walpin] because the President d[id] not have full confidence in him" and that this action was "fully supported by the Chair of [CNCS] (a Democrat) and the Vice-Chair (a Republican)." *Id.*, Ex. D at 1. The letter further asserted Walpin had "been suspended, with pay," which was "fully consistent with the Inspector General Act," and advised that the Acting United States Attorney for the Eastern District of California had "referred [Walpin's] conduct for review by the Integrity Committee of the Council of Inspectors General on Integrity and Efficiency" and that the administration was "aware of the circumstances leading to that referral and of [Walpin's] conduct throughout his tenure." *Id.* On June 16, 2009, Senator Claire McCaskill called on the White House to provide a "more substantive rationale" and Senators Joseph Lieberman and Susan Collins inquired about Walpin's removal. Compl. ¶¶ 34-35. In response, Eisen sent a letter to the three senators stating that Walpin "was removed after a review was unanimously requested by the bi-partisan Board of [CNCS]" and that the Board's action "was precipitated by a May 20, 2009 Board meeting at which Mr. Walpin was confused, disoriented, unable to answer questions and exhibited other behavior that led the Board to question his capacity to serve." Mot. to Dismiss, Ex. E., at 1. As additional justification for Walpin's removal, Eisen recited other examples of inappropriate activity and concluded that Walpin "had become unduly disruptive to agency operations,

impairing his effectiveness and . . . losing the confidence of the Board and the agency." *Id*.[1]

Walpin filed this action against the CNCS, its Acting Chief Executive Officer, Chief Human Capital Officer and General Counsel. The amended complaint alleges Walpin was "effectively removed from his post as Inspector General on June 10, 2009, prior to any colorable claim of a start of the required thirty (30) day notice-to-Congress period, rather than following a thirty (30) day notice period, as required by statute." Compl. ¶ 41. It seeks (1) declarations that the June 11, 2009 and June 16, 2009 letters failed to comply with the statutory notice requirements and that Walpin was "unlawfully transferred, and or constructively terminated in violation of the notice requirements of the [IGRA]" and (2) a "Writ of Mandamus directing Defendants to restore Mr. Walpin to his duly appointed position as Inspector General." Compl. at 19-20.

On June 17, the district court granted the defendants' motion to dismiss for failure to state a claim under Fed. R. Civ. P. 12(b)(6), concluding that Walpin failed to establish a clear right to relief as required for mandamus. Walpin filed a timely notice of appeal.

## II.

Section 3(b) of the IGA, as amended by section 3 of the IGRA, Pub. L. No. 110-409, 122 Stat. 4302, 4302 (2008), provides:

---

[1]Eisen cited the Acting United States Attorney's referral of Walpin's conduct for review and asserted Walpin had been absent from the CNCS's headquarters over the objection of the Board, "exhibited a lack of candor in providing material information to decision makers" and "engaged in other troubling and inappropriate conduct." Mot. to Dismiss, Ex. E.

(b) An Inspector General may be removed from office by the President. If an Inspector General is removed from office or is transferred to another position or location within an establishment, the President shall communicate in writing the reasons for any such removal or transfer to both Houses of Congress, not later than 30 days before the removal or transfer. Nothing in this subsection shall prohibit a personnel action otherwise authorized by law, other than transfer or removal.

5 U.S.C. app. 3 § 3(b).  Walpin contends the President violated this section's notice requirements in two respects and seeks relief therefor under the Mandamus Act, which "grants district courts original jurisdiction over 'any action in the nature of mandamus to compel an officer or employee of the United States or any agency thereof to perform a duty owed to the plaintiff.' " *Baptist Mem'l Hosp. v. Sebelius*, 603 F.3d 57, 62 (D.C. Cir. 2010) (quoting 28 U.S.C. § 1361).  To secure mandamus relief, a plaintiff must demonstrate that (1) he has a "clear right to relief"; (2) the defendant has "a clear duty to act"; and (3) there is no other adequate remedy available to plaintiff. *Id*. Reviewing de novo the district court's dismissal of Walpin's mandamus action, *see id*., we conclude that Walpin has not demonstrated a "clear and indisputable right to relief" based on a "clear and compelling duty" to act, as required to support mandamus relief. *In re Cheney*, 406 F.3d 723, 729 (D.C. Cir. 2005) (en banc) (internal quotations omitted).

Walpin first asserts a right to relief based on the President's alleged violation of the statutory duty to provide congressional notice thirty days before removing an inspector general.  Walpin maintains he was prematurely "removed" without the statutory notice on June 10, 2009, when he was placed on "administrative leave."  His placement on administrative leave, however, did not constitute removal from

office and therefore did not give rise to a clear right to relief for violating section 3(b). Walpin remained on administrative leave, with pay, until July 18, 2009, more than thirty days after the President's letters to the Congress, when he was in fact removed from the payroll. *See* Aff. of Gerald Walpin ¶ 11 n.1, *Walpin v. Corp. for Nat'l & Cmty. Serv.*, No. 09-1343 (D.D.C. Sept. 17, 2009). His status while on leave was much like the U.S. Postal Service employee's in *Oliver v. U.S. Postal Service*, 696 F.2d 1129 (5th Cir. 1983).

The employee in *Oliver* was given a "Notice of Proposed Removal" and placed on paid leave for 30 days. He contended the suspension of his duties violated a provision of the Civil Service Reform Act of 1978, which requires "at least 30 days' advance written notice" before taking certain adverse actions, including "a removal." 5 U.S.C. §§ 7513(b)(1), 7512(1). The Fifth Circuit disagreed, declining to "[i]nfer[] a right to remain on duty during the notice period," "where none is expressly provided or need be inferred to effect a protection granted." 696 F.3d at 1131. So here, IGA section 3(b) provides no right to continued duty performance but only to deferral of "removal" until thirty days after notice is given. Accordingly, we cannot conclude that the statutory language gives rise to the clear duty or right to relief necessary for mandamus relief. *Cf. Swan v. Clinton*, 100 F.3d 973 (D.C. Cir. 1996) (denying mandamus relief to removed holdover board member not granted statutory removal protection).

Walpin next contends the President violated his duty under section 3(b) to communicate "the reasons for . . . removal" in the thirty-day notice. The President did, however, provide in the letters to the Congress his reason for removing Walpin—that the President "no longer" had "the fullest confidence" in him. This explanation satisfies the minimal statutory mandate that the President communicate to the Congress his "reasons" for removal. Section 3(b) imposes no

"clear duty" to explain the reasons in any greater detail  *Cf. Natural Res. Def. Council v. Hodel*, 865 F.2d 288, 317-19 (D.C. Cir. 1988) (declining to review adequacy of detail in agency's report to Congress pursuant to statutory reporting requirement that "by its nature seems singularly committed to *congressional* discretion in measuring the fidelity of the Executive Branch actor to legislatively mandated requirements").  In fact, the Congress intended that the thirty-day notice requirement provide an opportunity for a more expansive discussion of the President's reasons for removing an inspector general.  *See* S. Rep. No. 110-262, at 4 (2008) (notice provision added to "allow for an appropriate dialogue with Congress in the event that the planned transfer or removal is viewed as an inappropriate or politically motivated attempt to terminate an effective Inspector General").  And this is precisely what occurred here.

For the foregoing reasons, we conclude that Walpin lacks the clear right to relief based on a clear duty to act that is necessary to obtain mandamus relief.[2]  Accordingly, the judgment of the district court is affirmed.

*So ordered*.

---

[2]Walpin did not argue below that he is entitled to a declaratory judgment in the absence of a right to mandamus relief, *see* 718 F. Supp. 2d at 24, and has therefore waived the argument. *See Murthy v. Vilsack*, 609 F.3d 460, 465 (D.C. Cir. 2010).