**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | | | |
|---|---|---|---|
| LAWRENCE U. DAVIDSON, III, | : | | |
| | : | | |
| Plaintiff, | : | Civil Action No.: | 14-01358 (RC) |
| | : | | |
| v. | : | Re Document Nos.: | 7, 13 |
| | : | | |
| UNITED STATES DEPARTMENT OF | : | | |
| STATE, *et al.*, | : | | |
| | : | | |
| Defendants. | : | | |

**MEMORANDUM OPINION**

**GRANTING DEFENDANTS' PARTIAL MOTION TO DISMISS OR IN THE ALTERNATIVE FOR SUMMARY JUDGMENT; DENYING PLAINTIFF'S MOTION TO TEST SUFFICIENCY OF ANSWER**

## I. INTRODUCTION

Plaintiff, Mr. Lawrence U. Davidson, III, *pro se*, has brought this action against the U.S. Department of State and sixteen individuals who are current or former employees thereof ("Defendants"), in their official and individual capacities. Mr. Davidson seeks both injunctive relief and monetary damages in connection with Department of State's refusal to provide him with diplomatic assistance in collecting an alleged debt that the former government of Libya owes him. Currently before the Court is Defendants' partial motion to dismiss, or in the alternative, for summary judgment.[1] Also pending is Mr. Davidson's motion to test the sufficiency of Defendants' answer. For the reasons discussed below, the Court will grant Defendants' motion and dismiss Mr. Davidson's claims seeking mandamus relief and monetary

---

[1] Although Mr. Davidson has also challenged Defendants' responses to his FOIA requests, Defendants answered those claims and have not moved to dismiss them or for summary judgment in its favor. *See* Defs.' Partial Mot. Dismiss or Alternative Summ. J. ("Defs.' Partial Mot.") at 3 n.4, ECF No. 7.

damages, enter judgment on the Administrative Procedure Act ("APA") claims, and deny Mr.

Davidson's motion to test the sufficiency of Defendants' answer.

## II. FACTUAL BACKGROUND

According to the Complaint, Plaintiff, Mr. Lawrence U. Davidson, III, is a U.S. citizen

and the sole proprietor of Export Strategic Alliance ("ESA"), which is a "for[-]profit

synchronistic multidisciplinary economic generator." Compl. ¶ 7, ECF No. 1. Mr. Davidson

contracted with the Great Socialist Peoples Libya Arab Jamahiriya ("Jamahiriya") to deliver

medicines valued at $70 million and 12 million metric tons of foodstuffs valued at $4.5 billion.

*Id.* In consideration for the delivery, Jamahiriya promised to pay Mr. Davidson $28 million,

which, to this date, remains unpaid. *Id.*

In November 2011, Mr. Davidson sought payment from Jamahiriya and its successor

entities within the Temporary Financing Mechanism, the National Transitional

Council/Government and Republic of Libya, as well as the Libyan Embassy in Washington,

D.C., by submitting a detailed invoice via letter, fax, and email. *Id.* ¶ 23. He received no

response, however, besides an electronic acknowledgement that the invoices were received. *Id.*

As early as September 2012, Mr. Davidson turned to the Department of State, hoping to receive

assistance through diplomatic channels. *Id.* ¶ 24. Specifically, he submitted requests for

"commercial diplomacy, or in the alternative a 'Letter d'Marche,'" a formal diplomatic

communication. *Id.* ¶ 26. In the requests, he explained that he had "exhausted all reasonable and

rational local . . . remedies," such as contacting cabinet officials and prime ministers. *Id.* ¶ 29.

In December 2013, Mr. Davidson received a letter from Defendant Susannah Cooper,

Director of the Office of Maghreb Affairs in the Bureau of Near Eastern Affairs, noting that "the

primary responsibility for resolution of such disputes remains with the U.S. citizen" and that Mr.

Davidson may wish to "consider engaging local counsel or bringing the dispute directly to the attention of the Libyan government." Defs.' Partial Mot. Dismiss or Alternative Summ. J. ("Defs.' Partial Mot.") at 6, ECF No. 7. In the same letter, Defendant Cooper provided an address for contacting the U.S. Embassy in Libya. *Id.*

In February 2014, Defendant Cooper once again responded to Mr. Davidson's continued requests by reminding him that "the primary responsibility for the resolution of disputes is on U.S. citizens," and requested that Mr. Davidson show the steps he had taken in order to exhaust local legal remedies in Libya. *Id.* Ex. 7 at 2, ECF No. 7-7. On April 3, 2014, Defendant Cooper sent another letter instructing Mr. Davidson that he "must exhaust local remedies" and that it is his primary responsibility, not the Department of State's, to resolve the disputes. *Id.* at 4. The letter also noted that the United States Embassy in Libya "has confirmed that there are readily available legal resources for international companies in Libya." *Id.*

Thereafter, Mr. Davidson instituted this action against Defendants, suing them in both their official and individual capacities. He alleges that "defendants individually had a duty to provide plaintiff with diplomatic services in the nature of commercial diplomacy more selectively a *Letter D'Marche* directed to the government of Libya as then existing to address an outstanding invoice for services rendered to the previous administration (Jamarihiya)." Compl. ¶ 43. In the Complaint, Mr. Davidson requests four specific remedies. First, he seeks injunctive relief "directing the State Department pursuant to authorities cited herein for commercial diplomacy," or more specifically, to send an official diplomatic communication to the Libyan government on his behalf. Compl. at 16. Second, Mr. Davidson seeks a declaratory judgment directing the Department of State to "comply with the plaintiff's Freedom of Information [Act] request in a timely manner." *Id.* Third, Mr. Davidson seeks compensatory damages from

Defendants, in the amount of 8% per annum for the unpaid value for the goods and services he provided to Jamarihiya. *Id*. Fourth, he seeks litigation costs in connection with this action. *Id*.

Defendants filed a partial motion to dismiss, or in the alternative for summary judgment, addressing the claims other than the Freedom of Information Act ("FOIA") claims. *See* Defs.' Partial Mot. As to Mr. Davidson's claims seeking a writ of mandamus and monetary damages, the motion argues that they should be dismissed for lack of subject matter jurisdiction and failure to state a claim upon which relief can be granted. *Id.* at 10–24. As to the APA claims, the motion moves to dismiss for failure to state a claim on the 5 U.S.C. § 706(1) claim, and for summary judgment on the 5 U.S.C. § 706(2) claim. *Id.* at 24–28. Defendants also filed an answer to Mr. Davidson's FOIA claims. *See* Answer, ECF No. 8.

Mr. Davidson filed a response to Defendants' motion and also moved to test the sufficiency of Defendants' answer pursuant to Federal Rules of Civil Procedure 7(b), 8(b)(3) and (4), and 11(b). *See* Pl.'s Mot. Test Sufficiency Answer ("Pl.'s Mot.") at 4, ECF No. 12. Both motions are now ripe for decision.

### III. ANALYSIS

#### A. Standard of Review

1. Motion to Dismiss for Lack of Subject Matter Jurisdiction (Rule 12(b)(1))

Federal courts are courts of limited jurisdiction, and the law presumes that "a cause lies outside this limited jurisdiction[.]" *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994). Thus, to survive a Rule 12(b)(1) motion to dismiss, a plaintiff bears the burden of establishing that a court has jurisdiction over his claim. *See Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 103–04 (1998) (standing and Article III jurisdiction); *Moms Against Mercury v. FDA*, 483 F.3d 824, 828 (D.C. Cir. 2007) (subject-matter jurisdiction). In determining

whether jurisdiction exists, a court may "consider the complaint supplemented by undisputed facts evidenced in the record, or the complaint supplemented by undisputed facts plus the court's resolution of disputed facts." *Coal. for Underground Expansion v. Mineta*, 333 F.3d 193, 198 (D.C. Cir. 2003) (citations omitted).

"If sovereign immunity has not been waived, a claim is subject to dismissal under Rule 12(b)(1) for lack of subject matter jurisdiction." *Clayton v. District of Columbia*, 931 F. Supp. 2d 192, 200 (D.D.C. 2013) (citing *F.D.I.C. v. Meyer*, 510 U.S. 471, 475 (1994) ("Sovereign immunity is jurisdictional in nature.")). Courts "may not find a waiver unless Congress' intent is unequivocally expressed in the relevant statute." *Hubbard v. Adm'r, E.P.A.*, 982 F.2d 531, 532 (D.C. Cir. 1992) (citation and internal quotation marks omitted).


2. Motion to Dismiss for Failure to State a Claim (Rule 12(b)(6))

The Federal Rules of Civil Procedure require that a complaint contain "a short and plain statement of the claim" in order to give the defendant fair notice of the claim and the grounds upon which it rests. Fed. R. Civ. P. 8(a)(2); *accord Erickson v. Pardus*, 551 U.S. 89, 93 (2007) (per curiam). A motion to dismiss under Rule 12(b)(6) does not test a plaintiff's ultimate likelihood of success on the merits; rather, it tests whether a plaintiff has properly stated a claim. *See Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974). A court considering such a motion presumes that the complaint's factual allegations are true and construes them liberally in the plaintiff's favor. *See, e.g.*, *United States v. Philip Morris, Inc.*, 116 F. Supp. 2d 131, 135 (D.D.C. 2000). It is not necessary for the plaintiff to plead all elements of his prima facie case in the complaint. *See Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 511–14 (2002); *Bryant v. Pepco*, 730 F. Supp. 2d 25, 28–29 (D.D.C. 2010).

Nevertheless, "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). This means that a plaintiff's factual allegations "must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555–56 (2007) (citations omitted). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements," are therefore insufficient to withstand a motion to dismiss. *Iqbal*, 556 U.S. at 678. A court need not accept a plaintiff's legal conclusions as true, *see id.*, nor must a court presume the veracity of the legal conclusions that are couched as factual allegations. *See Twombly*, 550 U.S. at 555.

A *pro se* complaint is held to "less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (quoting *Estelle v. Gamble*, 429 U.S. 97, 106 (1976)). But even *pro se* litigants "must plead factual matter that permits the court to infer more than the mere possibility of misconduct." *Jones v. Horne*, 634 F.3d 588, 596 (D.C. Cir. 2011) (internal citations and quotation marks omitted). Moreover, "[a] pro se complaint, like any other, must present a claim upon which relief can be granted." *Crisafi v. Holland*, 655 F.2d 1305, 1308 (D.C. Cir. 1981).

## 3. Summary Judgment (Rule 56)

Typically, a court may grant summary judgment when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A "material" fact is one capable of affecting the substantive

outcome of the litigation. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute is "genuine" if there is enough evidence for a reasonable jury to return a verdict for the non-movant. *See Scott v. Harris*, 550 U.S. 372, 380 (2007).

With respect to APA claims, the summary judgment standard is different, "because of the limited role of a court in reviewing the administrative record." *Kadi v. Geithner*, 42 F. Supp. 3d 1, 8 (D.D.C. 2012). When assessing a summary judgment motion in an APA case, "the district judge sits as an appellate tribunal." *Am. Bioscience, Inc. v. Thompson*, 269 F.3d 1077, 1083 (D.C. Cir. 2001). "The entire case on review is a question of law, and only a question of law." *Marshall Cnty. Health Care Auth. v. Shalala*, 988 F.2d 1221, 1226 (D.C. Cir. 1993). "In such a case, summary judgment merely serves as the mechanism for deciding, as a matter of law, whether the agency action is supported by the administrative record and otherwise consistent with the APA standard of review." *Oceana, Inc. v. Locke*, 831 F. Supp. 2d 95, 106 (D.D.C. 2011).

### B. Claims Against the Department of State and Defendants in Their Official Capacities

The Court first considers Mr. Davidson's claims for injunctive relief and monetary damages against the Department of State and Defendants in their official capacities. For the reasons below, the Court dismisses the claims seeking a writ of mandamus and monetary damages, and enters judgment on the APA claims, under 5 U.S.C. § 706(1) and 706(2).[2]

---

[2] For Mr. Davidson's claim under section 706(1), Defendants suggest that its motion be treated as a Rule 12(b)(6) motion to dismiss. *See* Defs.' Partial Mot. at 16–17. The Court finds that treating the motion as one for summary judgment is more consistent with prior case law under Section 706(1). *See e.g., Ass'n of Civilian Technicians, Inc. v. United States*, 603 F.3d 989, 995 (D.C. Cir. 2010) (affirming district court's decision to grant motion for summary judgment on plaintiff's APA claims under 5 U.S.C. § 706(1)).

1. Plaintiff is Not Entitled to Mandamus or Injunctive Relief

*a. Mandamus Relief*

First, Mr. Davidson seeks mandamus relief pursuant to 28 U.S.C. § 1361, asking this Court to compel Defendants to undertake commercial diplomacy, specifically by providing a formal government-to-government diplomatic communication with the Libyan government. Compl. at 16. Defendants argue that undertaking "specific acts of commercial diplomacy" is "inherently discretionary in nature," and should not be subject to mandamus. Defs.' Partial Mot. at 16.

The Mandamus Act confers jurisdiction on the district court over actions "in the nature of mandamus to compel an officer or employee of the United States or any agency thereof to perform a duty owed to the plaintiff." 28 U.S.C. § 1361 (2015). Because mandamus is a "drastic" form of relief, jurisdiction for such relief is "strictly confined." *See In re Cheney*, 406 F.3d 723, 729 (D.C. Cir. 2005); *see also 13th Regional Corp. v. U.S. Dep't. of Interior*, 654 F.2d 758, 760 (D.C. Cir. 1980) (explaining that mandamus relief may engender "potential conflict between the branches of government"). Therefore, relief through mandamus may only be granted where: (1) the plaintiff has a "clear right to relief"; (2) the defendant has a "clear duty to act"; and (3) there is "no other adequate remedy available" to the plaintiff. *Walpin v. Corp. for Nat. & Cmty. Servs.*, 630 F.3d 184, 187 (D.C. Cir. 2011) (quoting *Baptist Mem'l Hosp. v. Sebelius*, 603 F.3d 57, 62 (D.C. Cir. 2010)). Even where these requirements are met, the issuing court, "in the exercise of its discretion, must be satisfied that [mandamus relief] is appropriate under the circumstances." *Cheney v. U.S. Dist. Court for D.C.*, 542 U.S. 367, 381 (2004) (citation omitted). Among other reasons, the court generally refrains from granting the relief

when it "threaten[s] the separation of powers by embarrassing the executive arm of the Government." *Id.* (internal quotation marks omitted).

None of the authorities cited by Mr. Davidson imposes on Defendants a "clear duty to act." *Walpin*, 630 F.3d at 187. Mr. Davidson points to various grounds, including Executive Orders 13534 and 12674, which allegedly give rise to the "positive duty to provide commercial diplomacy."[3] Compl. ¶¶ 35–39. Executive Order 13534 directs the Export Promotion Cabinet, of which the Secretary of State is a member, to "promote Federal resources . . . to assist exports by U.S. companies," and "develop a framework for promoting services trade, including the necessary policy and export promotion tools." Exec. Order No. 13534, 3 C.F.R. 198, 200 (2010). The supposed duty to promote resources and develop a framework cannot be construed to impose a "clear duty" to provide diplomatic assistance for collection of a debt arising from a private contract. *A fortiori*, nowhere does the order explain what kind of diplomatic assistance the Department of State must provide. The lack of specificity of the alleged duty imposed in the order suggests that the purpose of the order is to give guidelines with respect to the government's goal of promoting exports, rather than to mandate a "nondiscretionary duty" that must be carried out as long as certain conditions are met. *See Heckler v. Ringer*, 466 U.S. 602, 616 (1984); *see also In re Cheney*, 406 F.3d at 729 (requiring that plaintiff demonstrate that defendants' duty stems from "compelling" legal grounds). Mr. Davidson also cites several parts of Executive Order 12674. Compl. ¶¶ 35–36. That order, however, addresses principles of ethical conduct for

---

[3] Mr. Davidson also cites Executive Order 126741, Executive Order 13160 and "National Export Initiative." Executive Order 126741 does not exist. Executive Order 13160 addresses discrimination in the education setting, which is completely irrelevant to Mr. Davidson's claim. *See* Exec. Order No. 13160, 3 C.F.R. 279 (2001). Lastly, the "National Export Initiative" refers to Executive Order 13534, which the Court addresses in this opinion, although the Complaint treats the two as independent sources. *See* Compl. ¶¶ 35–36.

government officers and employees, which are irrelevant to Mr. Davidson's claims.[4] *See* Exec. Order No. 12674, 3 C.F.R. 215 (1990).

Therefore, the Court dismisses Mr. Davidson's mandamus claim under 12(b)(6), for failure to state a claim. *Walpin*, 630 F.3d at 188 (affirming district court's dismissal for failure to state a claim where plaintiff failed to satisfy *In re Cheney* factors).

### b. APA

The Court next considers whether Mr. Davidson's claims for injunctive relief under the APA can survive Defendants' motion.[5]

Section 706(1) of the APA directs the court to "compel agency action unlawfully withheld." 5 U.S.C. § 706(1) (2015). A claim under the "unlawfully withheld" provision can proceed only if it contends that the government agency failed to take a "discrete agency action that it is required to take." *Norton v. S. Utah Wilderness Alliance*, 542 U.S. 55, 64 (2004). The Complaint seems to allege that the Department of State was under a duty to assist exports by U.S. companies, and that, as a logical extension, the Department of State must engage in commercial diplomacy with Libyan government on Mr. Davidson's behalf. *See* Compl. ¶ 35.

---

[4] Specifically, Executive Order 12674 mandates that government employees "put forth honest effort" in carrying out their duties, 3 C.F.R. 215, § 101(e), remain impartial in their treatment of "any private organization or individual," *id.* (h), refrain from engaging in "outside employment or activities" that are not compatible with their official duties, *id.* (j), and "endeavor to avoid any actions creating the appearance that they are violating the law or the ethical standards promulgated pursuant to this order," *id.* (n).

[5] Although Mr. Davidson failed to specifically raise an APA claim, the Complaint, by referring to certain acts as "arbitrary and capricious," *see, e.g.*, Compl. ¶ 31, suggests that such a claim is intended. Therefore, the Court will construe the *pro se* complaint liberally and consider Mr. Davidson's APA claim as if it were properly asserted. *See Erickson*, 551 U.S. at 94.

The Court does not find a basis for the claim that the Department of State was "required" to provide commercial diplomacy through an official diplomatic communication. *Norton*, 542 U.S. at 64. As set forth above, Mr. Davidson grounds his claim, in part, on Executive Order 13534, which, according to Mr. Davidson, imposes certain duties with respect to assisting exports by U.S. companies. *See* Compl. ¶ 35. Executive Order 13534, however, does not preclude Defendants' discretion with respect to Mr. Davidson's request. *In re Long-Distance Tel. Serv. Fed. Excise Tax Refund Litig.*, 751 F.3d 629, 634 (D.C. Cir. 2014) (explaining that Section 706(1) of the APA applies only to "discrete action that is legally required about which an official had no discretion whatever" (citing *Norton*, 542 U.S. at 63–64)) (*cert. denied sub nom. Cohen v. United States*, 135 S. Ct. 946 (2015)). Although the order mentions the duty to assist exports by U.S. companies, how to fulfill that duty is largely left for Defendants to decide.

Further, the Department of State *did* provide assistance to Mr. Davidson, by providing contact information for the Embassy of Libya in Washington. D.C., *see* Defs.' Partial Mot. Ex. 3, ECF No. 7-3, confirming with the U.S. Embassy in Tripoli that "there are readily available legal recourses for international companies in Libya . . . to process commercial disputes," *id.* Ex. 6, and providing a list of local attorneys in Libya, *id.* Whether or not Mr. Davidson found such assistance helpful, nothing suggests that Defendants were required to respond differently than they did. Therefore, Mr. Davidson's claim that the Department of State "unlawfully withheld" the provision of commercial diplomacy through a diplomatic communication fails.

Section 706(2) of the APA directs that the court "hold unlawful and set aside agency action, findings, and conclusions found to be arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A). The arbitrary-and-capricious standard of review is "very deferential." *Rural Cellular Ass'n v. FCC,* 588 F.3d 1095, 1105

(D.C. Cir. 2009). Therefore, the court will generally defer to the wisdom of the agency as long as the action is supported by "reasoned decisionmaking."[6] *Fox v. Clinton*, 684 F.3d 67, 75 (D.C. Cir. 2012); *see also Am. Paper Inst., Inc. v. Am. Elec. Power Serv. Corp.*, 461 U.S. 402, 422 (1983) (explaining that the agency's decision need not be "the only reasonable one, or even . . . the result [the court] would have reached") (quoting *Unemployment Comp. Comm'n v. Aragon*, 329 U.S. 143, 153 (1946)). "Moreover, the party challenging an agency's action as arbitrary and capricious bears the burden of proof." *See San Luis Obispo Mothers for Peace v. U.S. Nuclear Regulatory Comm'n*, 789 F.2d 26, 37 (D.C. Cir. 1986) (en banc).

The Complaint seems to allege that Defendants' refusal to grant Mr. Davidson's request, or, in the alternative, the Department of State's letters suggesting that there are potential legal resources in Libya, was "arbitrary and capricious." Compl. ¶¶ 31–33. Specifically, the Complaint contends that the "positions of the various named defendants are untenable as being arbitrary; capricious . . . causing [Mr. Davidson] denied access to his funds to his detriment." *Id.* ¶ 33. For the reasons below, the Court concludes that Defendants neither acted in an arbitrary or capricious manner nor abused their discretion.

First, Defendants were acting in accordance with the official manual that sets out the procedure for providing "assistance to citizens involved in commercial, investment, and other business related disputes abroad." Defs.' Partial Mot. 26. The State Department Foreign Service Affairs Manual ("the Manual") cautions against recommending or advising a specific course of action to the U.S. citizens involved in a private commercial disputes, "apart from advising them

---

[6] To the extent that Mr. Davidson seeks to compel Defendants to engage in foreign policy functions, an exception to the APA applies. *See* 5 U.S.C. § 554(a)(4). However, the Court need not address the issue of whether such exception applies to this case because it concludes that Defendants' actions were supported by "reasoned decisionmaking." *Fox*, 684 F.3d at 75.

in general terms to pursue on their own behalf available avenues of redress." Defs.' Partial Mot. Ex. 6 at 2, ECF No. 7-6. The Manual explains that providing specific advice or direction on "how best to resolve a dispute" could make the Department of State vulnerable to legal actions. *Id.* For cases where "the contract party is a government or a government-owned entity," as in the instant case, the Manual acknowledges that the appropriate assistance is "more complex." *Id.* Specifically, it recognizes that "such cases may merit treatment akin to that afforded . . . with investment disputes," and the Department of State can support the investor with a more affirmative action such as encouraging a negotiated settlement. *Id.* at 3. The Manual makes clear, however, that the party to the contract still "bears the primary responsibility" in respect to the matter, and requires that he or she "pursue all available local remedies" before the Department of State "takes a position on the merits of the investor's dispute with the host government." *Id.* Further, the Manual notes that "diplomatic representations to the host government" remain discretionary even when the requesting party has no available local remedy. *Id.* at 4.

In the letters responding to Mr. Davidson's request for commercial diplomacy, Defendant Cooper advised that Mr. Davidson "had primary responsibility for the resolution of the dispute," and provided him with "contact information for the Embassy of Libya in Washington, D.C." Defs.' Partial. Mot. at 27. Further, Defendant Cooper provided Mr. Davidson with the "list of local attorneys," and the name of an attorney who maintains a website in English. *Id.* Ex. 7 at 4. When Mr. Davidson insisted that he had exhausted all local remedies, Defendant Cooper, as authorized by the Manual, used her discretion not to engage in commercial diplomacy with the Libyan government, and first requested that Mr. Davidson provide evidence of efforts he had

made on his own behalf. *Id.* at 2 (requesting information regarding "steps [Mr. Davidson had] taken to resolve [the] dispute, including any steps taken to pursue local remedies in Libya").

Second, the Court is not persuaded by Mr. Davidson's implicit contention that the Manual itself is "neither logical nor rational." *See Clinton*, 684 F.3d at 80. Mr. Davidson asserts that the Manual conflicts with the "various Executive Orders" that he alleges to be "controlling." Pl.'s Response to Defs.' Mot. Dismiss or Alternative Summ. J. ("Pl.'s Response") at 11, ECF No. 12. As discussed above, however, nothing in the cited authorities precludes the Department of State's exercise of discretion in taking an official action in the current situation. Bearing in mind that the arbitrary-or-capricious standard of review is "very deferential," *Rural Cellular Ass'n*, 588 F.3d at 1105, the Court defers to the Department of State's reasoning that guaranteeing resolution of commercial disputes abroad is primarily the responsibility of the contracting parties, and that the Department of State has broad discretion in how it utilizes its resources in assisting the parties to such disputes. Mr. Davidson has presented no evidence nor made any factual allegations indicating that such broad discretion was abused in this case. Therefore, the Department of State's response to Mr. Davidson's request was not arbitrary or capricious, nor is there any viable claim that the Department of State abused its discretion.


2. Plaintiff is Not Entitled to Monetary Damages

Mr. Davidson also claims monetary damages against Defendants in their official capacities, in the amount of eight percent per annum of the payment that has not been collected. *See* Compl. at 16. However, sovereign immunity bars this request unless there exists a waiver unequivocally expressed in the relevant statute. *Hubbard*, 982 F.2d at 532. Here, Mr. Davidson

fails to show that any waiver to sovereign immunity applies. [7] Although the APA contains an express waiver of sovereign immunity, such waiver is applicable only to a claim "seeking relief other than money damages." [8] 5 U.S.C. § 702 (1976). Therefore, the claim is dismissed under Rule 12(b)(1) for lack of subject matter jurisdiction. *See Clayton*, 931 F. Supp. 2d at 200.

### C. Claims Against Defendants in Their Individual Capacities

Mr. Davidson next seeks injunctive relief and monetary damages against Defendants in their individual capacities. For the reasons below, the Court dismisses both claims under Rule 12(b)(6) for failure to state a claim upon which relief can be granted.

1. Plaintiff is Not Entitled to Injunctive Relief

First, Mr. Davidson seeks injunctive relief against Defendants in their individual capacities. It is well established that "there is no basis for suing a government official for declaratory and injunctive relief in his or her individual or personal capacity." *Hatfill v.*

---

[7] The only conceivable waiver of sovereign immunity that could arguably be applicable in this case is the Federal Tort Claims Act, 28 U.S.C. § 1346(b). Even assuming Mr. Davidson had alleged an underlying tort, however, the waiver is not available in the current case because it requires, as a prerequisite to "[a]n action . . . instituted upon a claim against the United States for money damages," that "the claimant shall have first submitted [an administrative] claim to the appropriate Federal agency and his claim shall have been finally denied by the agency in writing." 28 U.S.C. § 2675(a) (1966); *see also Simpkins v. D.C. Gov't*, 108 F.3d 366, 370 (D.C. Cir. 1997). Plaintiff has failed to meet this prerequisite, and thus his claim for money damages must be dismissed.

[8] Here, Plaintiff is seeking "compensatory damages" for the unpaid contract amount, not "specific relief" for an award of funds that he is allegedly entitled to under a statute. *See* Compl. 16; *see also Dep't of the Army v. Blue Fox, Inc.*, 525 U.S. 255 (1999) (explaining that compensatory damages are "given to the plaintiff to substitute for a suffered loss" whereas specific relief is an "attempt to give the plaintiff the very thing to which he was entitled") (citation omitted). Because Mr. Davidson contracted with Jamahiriya, not with the Department of State, there is no specific relief to claim.

*Gonzales*, 519 F. Supp. 2d 13, 19 (D.D.C. 2007); *accord Feit v. Ward*, 886 F.2d 848, 858 (7th Cir. 1989) (finding that a declaration that the challenged policy was unconstitutional and an injunction barring the defendants from implementing the policy in the future "can be obtained only from the defendants in their official capacities, not as private individuals"); *see also Cmty. Mental Health Servs. of Belmont v. Mental Health and Recovery Bd. Serving Belmont, Harrison & Monroe Counties*, 150 F. App'x 389, 401 (6th Cir. 2005); *Ameritech Corp. v. McCann*, 297 F.3d 582, 586 (7th Cir. 2002); *Frank v. Relin*, 1 F.3d 1317, 1327 (2nd Cir. 1993); *Del Raine v. Carlson*, 826 F.2d 698, 703 (7th Cir. 1987). "[O]nly by acting as a government official (not as an individual acting personally), can a public official's compliance with a court decree remedy the governmental action, policy or practice that is being challenged." *Hatfill*, 519 F. Supp. 2d at 26.

Because Mr. Davidson's claim for injunctive relief cannot be maintained against Defendants in their individual capacities, the Court dismisses the claim under 12(b)(6) for failure to state a claim upon which relief can be granted.

   2. Plaintiff is Not Entitled to Monetary Damages

Next, the Court considers Mr. Davidson's monetary damages claim against Defendants in their individual capacities, which the Court will construe as a *Bivens* claim. *See Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics*, 403 U.S. 388 (1971). According to the Complaint, Defendants had a "positive duty to provide commercial diplomacy," and Mr. Davidson was "adversely affected by . . . failure on the part of the defendants in the amount . . . of $28 million." Compl. ¶¶ 39–40. In response, Defendants raise three distinct defenses to Mr. Davidson's *Bivens* claim. First, Defendants argue that Mr. Davidson failed to effect proper

service.  Defs.' Partial Mot. 10–12.  Second, Defendants argue that the Court should not extend

*Bivens* to cover Mr. Davidson's claims.  *Id.* at 23–24.  Third, Defendants argue that they are

entitled to qualified immunity.  *Id.* at 18–22.  The Court agrees.

To serve a U.S. officer or employee in his or her individual capacity, Federal Rules of

Civil Procedure require that a party "serve the United States and also serve the officer or

employee."  Fed. R. Civ. P. 4(i)(3).  When serving an employee in a judicial district of the

United States, the server must: (1) deliver a copy of summons and the complaint to the individual

personally, (2) leave a copy of summons and complaint at the individual's dwelling or usual

place of abode with someone of suitable age and discretion who resides there, or (3) deliver a

copy of each to an agent authorized by appointment or by law to receive service of process.[9]  *Id.*

4(e)(2).

Mr. Davidson, through a process server, delivered a copy of the Complaint and summons

to an individual named Mary Reddy, an employee of the Department of State, who signed and

---

[9] Rule 4(e) also provides that a plaintiff may effect service by "following state law for serving a summons in an action brought in courts of general jurisdiction in the state where the district court is located or where service is made."  Fed. R. Civ. P 4(e)(1).  The applicable Civil Rules of the Superior Court of the District of Columbia permit service to be effected by "mailing a copy of the summons, complaint and initial order to the person by registered or certified mail, return receipt requested."  D.C. Super. Ct. R. Civ. P. 4(c)(3).  For service by mail, the same Rules require a return receipt signed by either the defendant or another individual with an accompanying affidavit establishing that the individual is authorized to receive service of process.  *Id.* 4(l)(2); *see also Wilson-Greene v. Dep't of Youth Rehab. Servs.*, No. 06 CV 2262 RJL, 2007 WL 2007557, at *2 (D.D.C. July 9, 2007) (concluding that service was improper when plaintiff had offered no evidence that mailed service was received by the defendants or persons authorized to receive it).  Mr. Davidson has not provided the Court with any proof of receipt of the alleged service by mail, either by Defendants, or by a person authorized to receive service of process.  *See* ECF No. 2.  Therefore, service was improper under the law of the District of Columbia.

delivered them to the appropriate offices. Pl.'s Response, 7. Delivering the complaint and summons to a workplace colleague, however, does not fall into any of the above methods, and is not in compliance with the rule. *See Leichtman v. Koons*, 527 A.2d 745, 746 (D.C. 1987) (finding the service insufficient where a copy of summons and complaint was left at defendant's office in defendant's absence); *see also Chen v. District of Columbia*, 256 F.R.D. 263, 266 (D.D.C. 2009) (finding the service insufficient where a copy of summons and complaint was mailed to defendants' workplace, and non-defendant employee who received the copy was not authorized to receive service on behalf of defendants). Mr. Davidson has not provided any evidence that Ms. Reddy was authorized to accept personal service for individual capacity suits by any of the individual Defendants.

While insufficient service would warrant dismissal of the plaintiff's *Bivens* claim without prejudice, *see* Fed. R. Civ. P. 4(m), the court has discretion to "proceed to evaluate the merits" for a 12(b)(6) determination. *See Simpkins v. D.C. Gov't*, 108 F.3d 366, 369–70 (D.C. Cir. 1997) (upholding the district court decision to proceed and dismiss a *Bivens* claim under 12(b)(6) despite the insufficiency of the service, when the claim is "insubstantial" and "imposes undue burdens on the officer being sued"); *see also Baker v. Dir., U.S. Parole Comm'n*, 916 F.2d 725, 726 (D.C. Cir. 1990) (upholding district court's *sua sponte* dismissal of a complaint for failure to state a cause of action where defendant had not been served).

In the instant case, dismissal under Rule 12(b)(6) is appropriate because allowing a second chance would merely "delay[] the inevitable."[10] *Simpkins*, 108 F.3d at 370. First, the Court agrees with Defendants' argument that it would be inappropriate to extend the reasoning of

---

[10] Defendants also suggest that this Court lacks personal jurisdiction. *See* Defs.' Partial Mot. at 10. But because Defendants' main argument is insufficiency of service, the Court declines to address personal jurisdiction.

*Bivens* to cover Mr. Davidson's claim. In *Bivens*, the Supreme Court recognized an implied constitutional cause of action against agents of the Federal Bureau of Narcotics when their warrantless entry, search and arrest violated the plaintiff's Fourth Amendment rights. *Bivens*, 403 U.S. at 389. The Court has extended the implied cause of action to non-Fourth Amendment cases as well. *See Davis v. Passman,* 442 U.S. 228, 248–49 (1979) (Extending *Bivens* to a case involving violation of the due process clause of the Fifth Amendment); *Carlson v. Green*, 446 U.S. 14, 17 (1980) (Extending *Bivens* to a case involving an Eighth Amendment violation). When a claim seeks expansion of *Bivens* liability to a context outside the Fourth Amendment, the court will engage in a two-part inquiry: (1) whether an alternative remedial scheme was available to the plaintiff and (2) if not, whether special factors counsel hesitation before extending the liability. *See Bush v. Lucas*, 462 U.S. 367, 375–78 (1983).

Foreign policy considerations have long been recognized as special factors counselling hesitation before extending the *Bivens* liability, especially if such an extension can have "significant and deleterious consequences for the United States in conducting activities beyond its boundaries." *See generally United States v. Verdugo-Urquidez*, 494 U.S. 259, 273 (1990). The decision of whether the United States should take diplomatic action against a foreign government necessarily implicates important foreign policy considerations such as avoiding an international dispute. Commercial disputes involving a foreign government entity are not uncommon. Extending *Bivens* to the instant case would, in effect, expose the Department of State to burdensome litigation, significantly constraining its ability "to respond to foreign situations involving [the United States'] national interest." *Id.* at 273–74.

Extending *Bivens* is even less justified in the instant case because Mr. Davidson has failed to identify any statutory or constitutional basis of his alleged injury. *Cf. Passman*, 442

U.S. at 248–49 (Fifth Amendment violation); *Carlson*, 446 U.S. at 17 (Eighth Amendment violation).[11]

Second, "even if this Court were to entertain [the] *Bivens* claim," the Complaint "fails to state a claim that can withstand the defense of qualified immunity." *Hartley v. Wilfert*, 918 F. Supp. 2d 45, 49 (D.D.C. 2013). The doctrine of qualified immunity provides that a federal employee defendant is immune from liability for civil damages unless the plaintiff establishes that: (1) the defendant's conduct violated the Constitution and (2) the constitutional right that was violated was so "clearly established . . . [that] a reasonable person would have known" of the right. *Pearson v. Callahan*, 555 U.S. 223, 231–32 (2009). The court may exercise discretion in deciding "which of the two prongs . . . should be addressed first," considering the facts of the case. *Id.* at 236.

The Court is not persuaded by the contention that Mr. Davidson had a "clearly established" constitutional right in respect to commercial diplomacy. *Id.* at 232. As discussed above, Mr. Davidson fails to cite any Constitutional or statutory provision that entitles him to the specific form of commercial diplomacy he has requested from the Department of State. To the contrary, the official manual and Executive Orders explicitly allow Defendants to exercise broad discretion with respect to Mr. Davidson's request. Because Defendants were acting within the authorized bounds of discretion, the position that the "the unlawfulness" of Defendants action was "apparent in the light of pre-existing law" is untenable. *Hartley*, 918 F. Supp. 2d at 56

---

[11] Mr. Davidson also seeks relief pursuant to 42 U.S.C. § 1983. Compl. at 4. As Defendants correctly point out, however, section 1983 applies only to *state* officials acting under color of *state* law. *See, e.g., District of Columbia v. Carter,* 409 U.S. 418, 424 (1973); *see also Abramson v. Bennett*, 707 F. Supp. 13, 16 (D.D.C. 1989) *aff'd sub nom. Abramson v. Cavazos*, 889 F.2d 291 (D.C. Cir. 1989). Here, Defendants are federal officials acting under color of federal law.

(internal quotation mark omitted). Therefore, the Court dismisses Mr. Davidson's *Bivens* claim under Rule 12(b)(6) for failure to state a claim upon which relief can be granted.[12]

### D. Plaintiff's Motion to Test Sufficiency of Answer

Lastly, the Court considers Mr. Davidson's pending motion to test the sufficiency of Defendants' answer. The motion contends that the answer "relates only to plaintiff's FOI[A] claim" and fails to respond to allegations 8 through 21 of the Complaint. *See* Pl.'s Mot. at 5.

Mr. Davidson misunderstands Defendants' obligations at this stage in the litigation. Defendants addressed the allegations 8 through 21 in their dispositive motion. *See* Defs.' Partial Mot. In fact, Defendants' Answer explicitly states that the Answer addresses only the FOIA claims. *See* Answer at 1, ECF No. 8. Defendants need not address the non-FOIA claims in their responsive pleading unless and until the Court "denies the motion or postpones its disposition until trial." Fed. R. Civ. P. 12(a)(4)(A); *see also Hamilton v. Sanofi-Aventis U.S., Inc.*, 628 F. Supp. 2d 59, 62 n.2 (D.D.C. 2009) (explaining that defendant's failure to answer a part of complaint within the specified time limit did not result in a default because filing a motion to dismiss "delay[ed] the submission of an answer until the motion is denied or its disposition is postponed until trial"). Therefore, the Court denies Mr. Davidson's motion.

---

[12] No other authorities Mr. Davidson cites in his Complaint provides him with a cause of action relevant to this case. Specifically, the two criminal statutes cited in the Complaint do not provide a cause of action to any of his allegations, 18 U.S.C. § 201 (1994) (defining bribery of public officials and witnesses as a crime); 18 U.S.C. § 20 (2009) (defining "financial institute" within the context of Title 18), nor do several Office of Governmental Ethics regulations therein, *see generally*, 5 C.F.R. § 2634.102 (2015).

## IV.  CONCLUSION

For the foregoing reasons, it is hereby ORDERED that the defendants' partial motion to dismiss or in the alternative for summary judgment is GRANTED, and the Plaintiff's motion to test the sufficiency of the answer is DENIED.  As a result, all of Plaintiff's non-FOIA claims are dismissed.  An order consistent with this Memorandum Opinion is separately and contemporaneously issued.

Dated:  July 7, 2015

RUDOLPH CONTRERAS
United States District Judge